CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Plaintiffs:
Fallen Productions, Inc.; Criminal Productions Inc.; LHF Productions Inc.; Millennium Funding, Inc.; Bodyguard Productions, Inc.; Hunter Killer Productions, Inc.; HB Productions, Inc.; Rambo V Productions, Inc.; TBV Productions, LLC; Colossal Movie Productions, LLC; Venice PI, LLC; Headhunter LLC; Dallas Buyers Club, LLC; Definition Delaware, LLC; and Wicked Nevada, LLC.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Fallen Productions, Inc.; Criminal Productions Inc.; LHF Productions Inc.; Millennium Funding, Inc.; Bodyguard Productions, Inc.; Hunter Killer Productions, Inc.; HB Productions, Inc.; Rambo V Productions, Inc.; TBV Productions, LLC; Colossal Movie Productions, LLC; Venice PI, LLC; Colossal Movie Productions, LLC; Headhunter LLC; Dallas Buyers Club, LLC; Definition Delaware, LLC; and Wicked Nevada, LLC., <br><br> Plaintiffs, <br><br> vs. <br><br> Harry Beasor and DOE <br><br> Defendants. | **Case No.: 1:20-cv-004** <br> (Copyright) <br><br> **COMPLAINT; EXHIBITS 1-3** <br><br> **(1) CONTRIBUTORY COPYRIGHT INFRINGEMENT** <br> **(2) DIRECT COPYRIGHT INFRINGEMENT** |

20-022A

# COMPLAINT

Plaintiffs Fallen Productions, Inc., Criminal Productions Inc., LHF Productions Inc.; Millennium Funding, Inc., Bodyguard Productions, Inc., Hunter Killer Productions, Inc., HB Productions, Inc., Rambo V Productions, Inc., TBV Productions, LLC, Colossal Movie Productions, LLC, Venice PI, LLC, Colossal Movie Productions, LLC, Headhunter LLC, Dallas Buyers Club, LLC, Definition Delaware, LLC and Wicked Nevada, LLC (collectively: "Plaintiffs") file this Complaint against Defendants Harry Beasor and DOE ("Defendants") and allege as follows:

## I. NATURE OF THE ACTION

1. This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

2. The Plaintiffs allege that Defendants are liable for: (1) direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and (2) contributory copyright infringement.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4. Defendants either reside in, solicit, transact, or are doing business

within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction. As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over them.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendants reside, and therefore can be found, in this State. Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendants or Defendants' agents resides or may be found in this District.

### III. PARTIES

#### A. The Plaintiffs

6. The Plaintiffs are owners of the copyrights for the motion pictures (hereafter: "Works"), respectively, as shown in Exhibit "1".

7. Plaintiffs Fallen Productions, Inc., Criminal Productions Inc., LHF Productions Inc., Millennium Funding, Inc., Bodyguard Productions, Inc., Hunter Killer Productions, Inc. HB Productions, Inc. and Rambo V Productions, Inc. are corporations organized and existing under the laws of the State of Nevada, have principal offices in Los Angeles, California and are affiliates of Millennium Media, a production company and distributor of a notable catalog of major motion pictures.

20-022A

8. Plaintiffs TBV Productions, LLC, Colossal Movie Productions, LLC, Venice PI, LLC, Colossal Movie Productions, LLC, Headhunter LLC, Dallas Buyers Club, LLC, Definition Delaware, LLC and Wicked Nevada, LLC are limited liability companies registered under the laws of the State of Nevada, have principal offices in Los Angeles, California and are affiliates of Voltage Pictures, a production company with a notable catalog of major award-winning motion pictures.

### B. The Defendants

9. Upon information and belief, Defendant Harry Beasor is an adult male over 21 years of age and a resident of Honolulu County.

10. Defendant Harry Beasor registered for a Virtual Private Network ("VPN") account with a VPN service provider.

11. The Defendants DOES are members of a group of BitTorrent users or peers (including Defendant Harry Beasor) whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm". The particular file a BitTorrent swarm is associated with has a unique "hash" number, which in this case is: SHA1: 5FD06ECEAD783738066F56B6F92CF62331797530 (the "Unique Hash Number"). The file name is "London Has Fallen (2016) [YTS.AG]". Exhibit "3".

12. Upon information and believe, Each of the Defendants DOES received

from Plaintiff's agent at least a first notice per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") requesting the individual to stop infringement of the Work or other Works via BitTorrent protocol.

13.    The ISP Spectrum provides the Internet service for Defendants DOES. Plaintiff intends to subpoena the ISP in order to learn the subscriber identities of Defendants DOES. Further discovery may be necessary in some circumstances in order to be certain of the identity of the proper Defendant. Plaintiffs believe that information obtained in discovery will lead to the identification of each Defendant's true names and permit the Plaintiffs to amend this Complaint to state the same. Plaintiffs further believe that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this Complaint as Defendants. Plaintiff will amend this Complaint to include the proper names and capacities when they have been determined. Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named Defendants participated in and are responsible for the acts described in this Complaint and damages resulting therefrom.

14.    Defendants registered for an account with a website referred to as YTS ("YTS website") using their email address.

15.    The YTS website is currently accessible at YTS.LT and was previously accessible at YTS.AM and YTS.AG.

20-022A

16. The YTS website is known for distributing torrent files of copyright protected motion pictures.

17. 

20-022A



18.

### IV. JOINDER

19. Pursuant to Fed. R. Civ. P. 20(a)(1), each of the Plaintiffs are properly joined because, as set forth in detail above and below, the Plaintiffs assert: (a) a right to relief arising out of the same transaction, occurrence, or series or transactions, namely the use of the YTS website by Defendants for copying and distributing Plaintiffs' Works; and (b) that there are common questions of law and fact.

20. Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiff LHF Productions, Inc. asserts that the infringements of its Work complained of herein by each of the Defendants was accomplished by the Defendants using the same YTS website; and there are common questions of law and fact.

### V. FACTUAL BACKGROUND

*A. The Plaintiffs Own the Copyrights to the Works*

20-022A

21. The Plaintiffs are the owners of the copyright in the Works, respectively. The Works are the subjects of copyright registrations, and this action is brought pursuant to 17 U.S.C. § 411. *See* Exhibit "1".

22. Each of the Works are motion pictures currently offered for sale in commerce.

23. Defendants had notice of Plaintiffs' rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices.

24. Defendants also had notice of Plaintiffs' rights through general publication and advertising associated with the motion pictures, and packaging and copies, each of which bore a proper copyright notice.

25. The Works are motion pictures currently offered for sale in commerce.

26. For example, a Blu-ray copy of the Work *Hellboy* was recently available for sale at a retailer in Kailua Kona, Hawaii for $15.95.



27. For example, a Blu-ray copy of the Work *Angel Has Fallen* was recently available for sale at a retailer in Kailua Kona, Hawaii for $22.19.



28. The YTS website provides torrent files, many including the name "YTS" in their file names, that can be used by a BitTorrent protocol client application to download copyright protected content, including Plaintiffs' Works.

29. Defendant Harry Beasor used the YTS website to download torrent files associated with Plaintiffs' Works from Internet Protocol ("IP") address 91.207.175.82 associated with his VPN service.

30. Defendant Harry Beasor downloaded torrent files associated with the motion pictures *London Has Fallen* on 2019-03-23 03:15:26, *Mechanic: Resurrection* on 2019-03-23 07:16:41 and *I Feel Pretty* on 2019-03-25 16:13:56, 2019-03-25 16:14:07 and 2019-03-25 16:17:19 from the YTS website.

20-022A

31. Defendant Harry Beasor used the IP address of the VPN service to download complete copies Plaintiffs' Works. *See* Exhibit "2".

32. Defendant Harry Beasor used the IP address of the VPN service because he knew that he was copying the Works without a valid license and therefore in violation of Plaintiffs' exclusive rights.

33. The YTS website displays, "WARNING! Download only with VPN…" and further information warning users that their IP address is being tracked by the ISP and encouraging them to protect themselves from expensive lawsuits by purchasing service from a VPN on its homepage. Upon information and belief, this warning has appeared on the YTS website since 2018.

> **Warning! Download only with VPN...**
> Downloading torrents is risky for you: your IP and leaked private data being actively tracked by your **ISP** and **Government Agencies**. Protect yourself from expensive lawsuits and fines NOW! You must use a VPN like **Express**. It is the only way to download torrents fully anonymous by encrypting all traffic with zero logs.

**B. Defendants Used BitTorrent To Infringe the Plaintiffs' Copyrights.**

34. BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

35. The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the

BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### *1. Defendants installed a BitTorrent Client onto his or her Computer.*

36. A BitTorrent Client is a software program that implements the BitTorrent Protocol. There are numerous such software programs which can be directly downloaded from the Internet.

37. Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

38. Each of Defendants installed a BitTorrent Client onto his or her computer.

### *2. The Initial Seed, Torrent, Hash and Tracker*

39. A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using, for example, the Client he or she installed onto his or her computer.

40. The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

20-022A

41. The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

42. When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

43. Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

44. The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

45. The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

46. Depending on the BitTorrent Client, a tracker can either be a dedicated

20-022A

computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

47. "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent websites including the website YTS.

48. Defendants went to torrent sites including the website YTS to upload and download Plaintiffs' copyrighted Works.

### 4. The Peer Identification

49. The BitTorrent Client will assign an identification referred to as a Peer ID to the computer so that it can share content (here the copyrighted Work) with other peers.

50. Upon information and belief, each Defendant was assigned a Peer ID by their BitTorrent client.

### 5. Uploading and Downloading a Work Through a BitTorrent Swarm

51. Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

52. The BitTorrent protocol causes the initial seeder's computer to send

13

different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

53. Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

54. In this way, all of the peers and seeders are working together in what is called a "swarm."

55. Here, Defendants participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

56. In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

57. Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

20-022A

## *6. The Plaintiffs' Computer Investigator Identified the Defendants' IP Addresses as Participants in Swarms That Were Distributing Plaintiffs' Copyrighted Works.*

58. The Plaintiffs retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

59. MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

60. MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

61. The IP addresses, Unique Hash Numbers, and hit dates contained in Exhibits 2-3 accurately reflect what is contained in the evidence logs.

62. The logged information in Exhibits 2-3 show that Defendants copied pieces of the Plaintiffs' copyrighted Works identified by the Unique Hash Numbers.

63. The Defendants' computers used the identified IP addresses in Exhibits 2-3 to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the

15

20-022A

Unique Hash Number.

64. MEU's agent analyzed each BitTorrent "piece" distributed by the IP addresses listed on Exhibits 2-3 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

65. MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

### C. Defendant Harry Beasor seeded and distributed full copies of the Works

66. Defendant Harry Beasor downloaded and/or uploaded torrent files of the Works to and/or from the YTS website from one or more computing devices under his control using the IP address associated with his VPN service.

67. Defendant Harry Beasor seeded copies of the Works from computing devices under his control using the IP address associated with his VPN service.

68. Defendant Harry Beasor seeded on his computing device and made available the files of the Works shown in Exhibit 2 available to users in Hawaii, the United States and the entire World to download and thus copy.

69. Defendants distributed the file of the motion picture *London Has Fallen* to individuals in the World, United States and specifically Hawaii as shown in Exhibit 3.

70. Upon information and belief, Defendant Harry Beasor does not have a

DMCA agent as required by the DMCA to assert safe harbor as of January 3, 2020.

## VI. FIRST CLAIM FOR RELIEF
### (Direct Copyright Infringement)

71. Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

72. Plaintiffs are the copyright owners of the Works which each contains an original work of authorship.

73. Defendants copied the constituent elements of the Works.

74. Plaintiffs did not authorize, permit, or provide consent to Defendants to copy, reproduce, redistribute, perform, or display their Works.

75. As a result of the foregoing, Defendants violated the Plaintiffs' exclusive rights to reproduce the Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501.

76. Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

77. The Plaintiffs have suffered damages that were proximately caused by each of the Defendant's copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VIII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon participation in the BitTorrent Swarm)

20-022A

78. Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

79. By participating in the BitTorrent swarms with others, Defendants induced, caused or materially contributed to the infringing conduct of others.

80. Plaintiffs did not authorize, permit, or provide consent to the Defendants inducing, causing, or materially contributing to the infringing conduct of others.

81. Defendants knew or should have known that the other BitTorrent users in a swarm with them were directly infringing the Plaintiffs' copyrighted Works by copying constituent elements of the registered Works that are original. Indeed, Defendants directly participated in and therefore materially contributed to others' infringing activities.

82. The Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

83. By engaging in the contributory infringement alleged in this Complaint, the Defendants deprived not only the producers of the Works from income that could have been derived when the respective film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy. The Defendants'

20-022A

misconduct therefore offends public policy.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully requests that this Court:

(A) enter temporary, preliminary and permanent injunctions enjoining Defendants from continuing to directly infringe and contribute to infringement of the Plaintiffs' copyrighted Works;

(B) enter an order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that any service provider providing service for Defendant Harry Beasor which he used to infringe Plaintiffs' Works immediately cease said service;

(C) award the Plaintiffs' actual damages and Defendants' profits in such amount as may be found; alternatively, at Plaintiffs' election, for maximum statutory damages per Work pursuant to 17 U.S.C. § 504-(a) and (c);

(D) award the Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(E) grant the Plaintiffs any and all other and further relief that this Court deems just and proper.

The Plaintiffs hereby demands a trial by jury on all issues properly triable by jury.

DATED: Kailua-Kona, Hawaii, January 3, 2020.

20-022A

CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiffs

20-022A